Paul S. Aronzon (SBN 88781)
paronzon@milbank.com
Robert J. Liubicic (SBN 271465)
rliubicic@milbank.com
Alexandra Achamallah (SBN 317978)
aachamallah@milbank.com
Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
Telephone: 424-386-4000
Facsimile: 213-629-5063

Michael Kaufman (SBN 254575)
mkaufman@aclusocal.org
Sameer Ahmed (SBN 319609)
sahmed@aclusocal.org
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, California 90017
Telephone: 213-977-9500
Facsimile: 213-977-5297

*Pro Bono Attorneys for Plaintiffs*
*Immigrant Defenders Law Center, Western State*
*College of Law Immigration Clinic, Public Counsel,*
*and Esperanza Immigrant Rights Project at Catholic*
*Charities*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

IMMIGRANT DEFENDERS LAW CENTER, WESTERN STATE COLLEGE OF LAW IMMIGRATION CLINIC, PUBLIC COUNSEL, AND ESPERANZA IMMIGRANT RIGHTS PROJECT AT CATHOLIC CHARITIES,

Plaintiffs,

vs.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AND UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Defendants.

Case No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Freedom of Information Act, 5 U.S.C. § 552

# INTRODUCTION

1.      Plaintiffs, the Immigrant Defenders Law Center, Western State College of Law Immigration Clinic, Public Counsel, and Esperanza Immigrant Rights Project at Catholic Charities (collectively, the "Requesters"), bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Immigration and Customs Enforcement ("ICE") and the United States Department of Homeland Security ("DHS") to compel ICE to produce records responsive to Requesters' September 7, 2018 FOIA request seeking information about ICE's collaboration with the Union Pacific Railroad Police ("UPRP") in the enforcement of federal immigration laws (the "Request").

2.      The UPRP consists of more than 175 officers with investigative and arrest powers on and off railroad property across the United States.[1]   Attorneys and advocates in the Southern California area have identified many incidents where UPRP officers have stopped, detained, apprehended, and arrested individuals, and then transferred custody of those individuals to ICE.

3.      The relationship between ICE and UPRP is troubling and shrouded in secrecy.  Many of the individuals that UPRP has transferred to ICE are homeless and among the most vulnerable members of society.  UPRP's participation in federal immigration enforcement also raises constitutional concerns, including the prospect that individuals are being detained in violation of the Fourth Amendment and targeted on the basis of their race or ethnicity in violation of the Equal Protection Clause.  *See, e.g.*, *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015); *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014).

4.      In the Request, Requesters sought, among other records, release of "[c]ommunications between any employee(s) for the Union Pacific Railroad Police and any ICE employee(s) working in any ICE Field Office, including but not

---

[1] Union Pacific Special Agents, https://www.up.com/aboutup/community/safety/special_agents/index.htm (last visited March 19, 2019).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    limited to the Los Angeles Field Office."  Requesters further asked that ICE direct

2    the Request to "all appropriate offices and departments within the agency,

3    including, but not limited to, the Office of Public Affairs, the Office of Detention

4    Policy and Planning, the Office of Detention Oversight, and the Office of

5    State/Local Coordination."

6         5.     In violation of FOIA, ICE has failed to conduct a reasonable search in

7    response to the Request and has failed to produce any responsive records.  ICE's

8    unlawful actions have prevented Requesters and the public from learning about

9    ICE's harmful relationship with UPRP.

10        6.     Through this lawsuit, Requesters seek to obtain the documents they

11    first sought in September 2018, in order to vindicate the public's right "to know

12    what the Government is up to," *NARA v. Favish*, 541 U.S. 157, 171 (2004)

13    (internal quotations and citations omitted), and to uphold FOIA's promise of

14    transparency.

15                        **JURISDICTION AND VENUE**

16        7.     This Court has subject matter jurisdiction over this action under 5

17    U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

18        8.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

19    § 1391(e).

20                              **PARTIES**

21        9.     The Requesters are the Immigrant Defenders Law Center, Western

22    State College of Law Immigration Clinic, Public Counsel, and Esperanza

23    Immigrant Rights Project at Catholic Charities.

24        10.     Immigrant Defenders Law Center is a social justice law firm.

25    Immigrant Defenders employs a team of attorneys and legal professionals to

26    provide pro bono legal representation to detained immigrants facing removal in

27    immigration court.  Immigrant Defenders also provides training to attorneys and

28    works in collaboration with other non-profit organizations to ensure that advocates

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and community members have accurate, up-to-date information about immigration enforcement practices in the country, with an emphasis on Southern California.

11.    The Western State College of Law Immigration Clinic is a program at Western State College of Law, a non-profit, American Bar Association-accredited law school located in Irvine, California.  The Immigration Clinic trains upper-level law students in practical lawyering skills and provides pro bono representation to indigent immigrants in a range of immigration matters.  The Immigration Clinic engages in community education, advocacy, policy reform, and coalition-building in conjunction with a range of non-profit organizations located in Southern California and throughout the country.  The Immigration Clinic has also participated in the preparation of reports about immigration enforcement activity and best practices for immigration advocates.

12.    Public Counsel, based in Los Angeles, California, is the largest pro bono law firm in the nation.  Public Counsel represents indigent immigrants from around the world in their claims to remain safe and free in the United States. Public Counsel has provided legal services to thousands of immigrants detained by the Department of Homeland Security, ranging from legal orientations and pro se assistance to direct representation in removal and bond proceedings.  Public Counsel also represents immigrants in impact litigation, and engages in training, advocacy, and coalition-building efforts with other non-profit and grassroots groups seeking to vindicate immigrants' rights.

13.    Esperanza Immigrant Rights Project is associated with Catholic Charities, a non-profit organization devoted to providing pro bono and low-cost legal assistance to indigent immigrants.  Esperanza also provides training to attorneys and works in collaboration with other non-profit organizations to ensure that advocates and community members have accurate, up-to-date information about immigration enforcement practices in the country, with an emphasis on Southern California.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

14.     Defendant United States Department of Homeland Security ("DHS") is a cabinet-level department of the United States government in charge of administering and enforcing the immigration laws of the United States.  Upon information and belief, DHS has possession and control over the records Requesters seek.

15.     Defendant United States Immigration and Customs Enforcement ("ICE") is a component of DHS[2] and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).  The ICE website, https://www.ice.gov, states that FOIA requests may be e-mailed to ICE-FOIA@dhs.gov.[3]  Upon information and belief, ICE has possession and control over the records Requesters seek and is responsible for fulfilling Requesters' FOIA request of September 7, 2018.

## LEGAL FRAMEWORK

16.     Under FOIA, the federal government is required to release requested records to the public, unless a statutory exemption applies.  5 U.S.C. § 552.  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).  Through access to government information, FOIA helps the public better understand the operations of the government, which enables a functioning democracy.

17.     The FOIA statute requires an agency to make a reasonable search for responsive records and within its response, to denote information such as which

---

[2] *See* Official Website of the Department of Homeland Security, U.S. Immigration and Customs Enforcement: History, https://www.ice.gov/history ("One of the agencies in the new Department of Homeland Security was the Bureau of Immigration and Customs Enforcement, now known as U.S. Immigration and Customs Enforcement, or ICE.") (last visited March 19, 2019).

[3] Official Website of the Department of Homeland Security, U.S. Immigration and Customs Enforcement: Submitting a FOIA Request, https://www.ice.gov/foia/request (last visited March 19, 2019).

files were searched by whom, the agency's approach to document location, and the procedures the agency utilized.  *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

18.  An agency must respond to a FOIA request within twenty working days of receipt, notify the requester of its determination to fulfill or not fulfill the request, provide the reasons for its determination, and inform the requester of the right to appeal the determination.  5 U.S.C. § 552(a)(6)(A)(i).  An agency must respond to any appeal of a determination within twenty working days of receipt.  5 U.S.C. § 552(a)(6)(A)(ii).

19.  In "unusual circumstances," an agency may postpone its response to a FOIA request or appeal, but it must provide notice and "the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B)(i).  "No such notice shall specify a date that would result in an extension for more than ten working days . . . ."  *Id.*

20.  FOIA requires an agency to timely disclose all records responsive to a FOIA request that do not fall within nine narrowly-construed statutory exemptions.  5 U.S.C. § 552(a)(3)(A), (b)(1)–(9).  If an agency claims a statutory exemption, the agency is obligated to provide any reasonably segregable portion of non-exempt information to the requester, specify the amount of information withheld, and identify the exemption under which the withholding is made.  5 U.S.C. § 552(b).

21.  A district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# FACTUAL ALLEGATIONS

## Background

22. Immigrants have become increasingly targeted by ICE—even if they have lived in the United States for many years, have U.S.-born children, and have never had a run-in with law enforcement.[4]

23. In addition, the federal government has expanded collaborations between local law enforcement authorities, DHS, and ICE. For instance, DHS has expanded its use of 8 U.S.C. § 1357(g) agreements, in which state and local law enforcement are deputized to engage in immigration enforcement activity. *See* 8 U.S.C. § 1357(g); Executive Order: Enhancing Public Safety in the Interior of the United States at Sec. 8 (Jan. 25, 2017), at https://www.whitehouse.gov/presidential-actions/executive-order-enhancing-public-safety-interior-united-states/.

24. UPRP is affiliated with the Union Pacific Corporation, a publicly-held corporation that operates the Union Pacific Railroad. According to its website, UPRP consists of more than 175 Special Agents, who "are certified state law enforcement officers with investigative and arrest powers both on and off railroad property in most states," and "also have interstate law enforcement authority pursuant to federal law."[5] UPRP is accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc., and its authority covers 32,000 miles of track in 23 states. *Id.*

25. Many individuals and advocates have complained about the lack of governmental oversight of abuses by railroad police, including UPRP. *See, e.g.*, Ron Nixon, Complaints Rise Against Nation's Railroad Police, New York,

---

[4] American Immigration Council, https://www.americanimmigrationcouncil.org/research/immigration-enforcement-priorities-under-trump-administration (last visited March 19, 2019).
[5] Union Pacific Special Agents, https://www.up.com/aboutup/community/safety/special_agents/index.htm (last visited March 19, 2019).

https://www.nytimes.com/2015/05/29/us/complaints-rise-against-nations-railroad-police.html (May 28, 2015) ("People who say they have been mistreated by the railroad police have little recourse except to complain to the railroads, but because the railroads are private companies, they can operate largely in secret.").

26.     However, there is almost no information in the public domain about whether and how UPRP works with ICE to engage in immigration enforcement activity.  Indeed, Requesters previously filed requests to UPRP for records regarding its collaboration with ICE under the California Public Records Act and received no response.  Although UPRP admits that its officers are "certified state law enforcement officers," UPRP has refused to produce any records, claiming that it is not subject to the California Public Records Act.

27.     Accordingly, the public has an interest in understanding the manner in which the federal government has involved UPRP in the enforcement of federal immigration laws.

### Collaboration Between ICE and UPRP

28.     Attorneys and advocates in the Southern California area, including Requesters, have identified multiple incidents in which UPRP officers have stopped, detained, apprehended, and arrested individuals, and then contacted ICE and transferred custody of the individuals to ICE.  In at least one case, ICE has indicated that UPRP was working with ICE on a "Fugitive Operations" investigation.

**A.     January 2018:  El Monte**

29.     One incident occurred on January 3, 2018, in El Monte, California, where UPRP arrested an individual referred to as "Person 1" herein, then transferred custody of Person 1 to ICE the same day.

30.     Prior to the arrest, Person 1 had been a resident of El Monte, California for over twenty years.  Person 1's brother, daughters, and grandchildren all live in El Monte, California.

31. On January 3, 2018, at approximately 8:30 A.M., Person 1 was riding his bicycle home from work along the San Gabriel River Trail. As Person 1 approached his exit, he observed UPRP and City of El Monte police officers standing on the trail, and he got off of his bicycle and began walking as a precaution. As Person 1 walked down the path, he observed three individuals, who appeared to be of Hispanic descent, sitting on the ground adjacent to the path near the officers.

32. When Person 1 began to walk past the officers, an armed UPRP officer approached him and asked what he was doing there and where he was going. Person 1 calmly responded that he was on his way home and continued walking toward his exit, but the UPRP officer ordered him to stop, while placing a hand on his weapon. Person 1, in fear for his safety and life, complied.

33. The UPRP officer asked Person 1 if he had "papeles to work in this country," and Person 1 responded that he did not have any "papeles." The officer then asked Person 1 for identification. Person 1 provided a document and explained his immigration status to the best of his understanding. The UPRP officer took the document from Person 1 and ordered Person 1 to take a seat with the three individuals sitting on the ground near the path.

34. The UPRP officer asked the El Monte police officers to "help him determine whether [Person 1] had a legal basis for being in the country." After several minutes, the officers took Person 1 and the other three individuals sitting on the ground and placed the four of them underneath the railroad track bridge—an area that is secluded and not easily visible to the public. Person 1 was not allowed to retrieve his bicycle or his backpack, which were both left near the path.

35. Once placed under the railroad track bridge, Person 1 and the three other detainees waited for approximately two hours, during which time Person 1 understood that he was not free to leave. Eventually, one of the other detainees was released.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

36.     Person 1 and the two remaining detainees were then picked up by ICE agents.  The ICE agents transported Person 1 to the James A. Musick Detention Facility in Irvine, California.  In Person 1's removal proceedings, ICE did not deny that ICE agents collaborated with UPRP to take Person 1 into custody.

**B.     January 2018:  Santa Ana**

37.     In another incident occurring on January 17, 2018 in Santa Ana, California, UPRP arrested an individual referred to as "Person 2" herein as part of a "trespass sweep," and transferred custody of Person 2 to ICE a few hours later.

38.     At around 7:00 A.M. on January 17, 2018, UPRP arrested Person 2, a homeless individual, under a suspicion that he had violated California Penal Code § 369i(a), which penalizes trespass upon railroad property.  At or around 8:36 A.M., UPRP called ICE with a "request for assistance" and informed ICE that Person 2 was in UPRP custody and allegedly claiming foreign birth.  ICE officers arrived at approximately 10:00 A.M. and subsequently transported Person 2 to the ICE Los Angeles Staging Facility.

**C.     February 2018:  Van Nuys**

39.     In another incident occurring on February 8, 2018 in Van Nuys, California, UPRP arrested an individual referred to as "Person 3" herein and transferred custody of Person 3 to ICE later that morning.

40.     Person 3, a homeless individual, had been riding a bicycle outside of Union Pacific Railroad property in Van Nuys when an armed UPRP officer stopped her.  The officer told Person 3 to get off of the bicycle, and once Person 3 complied, the officer immediately handcuffed her.  After rummaging through Person 3's personal belongings, the officer threw the belongings on the ground and left them in the dirt with Person 3's bicycle.  The officer then put Person 3 in the back of his UPRP vehicle.

41.     The officer told Person 3 that he would release her if she provided him accurate information.  After the officer learned through questioning Person 3

1   that she had been living in a camp along the Union Pacific Railroad, the officer

2   drove himself and Person 3 to the camp. During the drive, Person 3 told the officer

3   she was in pain due to the tight handcuffs around her wrists and injuries from a

4   recent miscarriage, which were aggravated by driving over the bumpy train tracks,

5   but the officer ignored her.

6       42.    When the UPRP officer arrived with Person 3 at the camp, another

7   UPRP vehicle was already there waiting. The UPRP officers left Person 3

8   handcuffed in the car and raided the various dwellings in the camp. The UPRP

9   officers arrested at least one other individual, referred to herein as "Person 4," and

10  put him in the back of the UPRP vehicle with Person 3.

11      43.    One of the UPRP officers alerted ICE that Person 3 was in their

12  custody and requested assistance. That UPRP officer later testified in Immigration

13  Court that his call to ICE was required by protocol because he was unable to

14  positively identify Person 3.

15      44.    After Person 3 waited handcuffed in the back of the UPRP vehicle

16  with Person 4 for around two hours, ICE agents in civilian clothes arrived at 9:30

17  A.M. to collect her. The ICE agents took Person 3 from the UPRP vehicle and

18  placed her into an ICE vehicle, then drove her to an ICE facility in Orange County,

19  California.

20      45.    Person 3, who has had little education and has received psychiatric

21  treatment for anxiety in the past, was disoriented, confused, and crying throughout

22  the encounters with UPRP and ICE. No officer explained to Person 3 why she had

23  been arrested in a manner that she could comprehend, and Person 3 was never read

24  her rights under the Fifth Amendment.

25  **D.    May 2018: North Hollywood**

26      46.    In another incident occurring in North Hollywood, California on May

27  2, 2018, UPRP arrested two individuals referred to as "Person 5" and "Person 6,"

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

respectively, herein and transferred custody of Person 5 and Person 6 to ICE the same day.

47.   In the cases of both Person 5 and Person 6, ICE had responded to "a request for assistance" from UPRP regarding individuals in UPRP custody allegedly claiming foreign birth.  After ICE's Joint Criminal Alien Removal Taskforce ("JCART") interviewed Person 5 and Person 6, ICE took them into custody.

**E.   July 2018:  Pacoima**

48.   In another incident occurring in Pacoima, California on July 18, 2018, UPRP arrested an individual referred to as "Person 7" herein and transferred custody of Person 7 to ICE the same day.

49.   After detaining Person 7, UPRP called ICE "requesting assistance." Around one hour later, JCART arrived and conducted an interview of Person 7. ICE then took Person 7 to the ICE Los Angeles Staging Facility.

**F.   August 2018:  Whittier**

50.   In an incident occurring in Whittier, California on August 16, 2018, UPRP arrested an individual referred to as "Person 8" herein and transferred custody of Person 8 to ICE the same day.

51.   At around 9:16 A.M. on August 16, 2018, ICE received a call from UPRP "requesting assistance" with Person 8, who was in UPRP custody.  At around 11:00 A.M., JCART officers arrived and conducted an interview of Person 8.  ICE then transported Person 8 to the ICE Los Angeles Staging Facility.

**Plaintiffs' FOIA Request and Appeal**

52.   On September 7, 2018, Professor Jennifer Koh, on behalf of Requesters, submitted a FOIA request to ICE seeking information related to ICE's communications with, efforts to induce cooperation from, policies regarding, and other collaboration with UPRP regarding immigration enforcement activity ("the Request") (attached hereto as Exhibit A).  The Request was sent via overnight mail

to the ICE Los Angeles Field Office and the ICE Los Angeles Office of Chief Counsel and via e-mail to ICE-FOIA@dhs.gov.

53.     Specifically, the Request sought the following, dating back to January 2017:

A. Records concerning any communications between any ICE officer, agent, attorney or employee and any Union Pacific Railroad Police or Union Pacific Corporation officer, agent, attorney or employee regarding the identification, investigation, apprehension, arrest, detention, or referral of persons believed to have violated the immigration laws;

B. Records concerning any current agreements between the Union Pacific Railroad Police or Union Pacific Corporation and ICE pursuant to Section 287(g) of the Immigration and Nationality Act or any other agreements authorizing state or local law enforcement agents to perform the functions of an immigration officer;

C. Records concerning any request to or from the Union Pacific Railroad Police to enter into any other type of agreement with ICE;

D. Forms I-1213 that reference activity by the Union Pacific Railroad Police;

E. Communications between any employee(s) for the Union Pacific Railroad Police and any ICE employee(s) working in any ICE Field Office, including but not limited to the Los Angeles Field Office;

F. Records concerning the number of individuals who have been detained, arrested or otherwise subject to questioning by ICE agents as a result of investigation, apprehension, arrest or detention by Union Pacific Railroad Police employees.

54.     Requesters sought a fee waiver of all costs incurred by ICE in answering the Request because the information sought was "likely to contribute

significantly to public understanding of the operations or activities of the government and [was] not primarily in the [Requesters'] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii).  Requesters explained in the Request that although UPRP operates throughout many parts of the country, there is almost no data in the public domain about ICE's potential collaboration with UPRP or whether and how ICE has encouraged UPRP to engage in immigration enforcement activity, notwithstanding certain state and local laws that seek to preclude local law enforcement collaboration with ICE, such as the California Values Act, Cal. Gov. Code § 7284 *et. seq*.  Requesters emphasized that they have a proven track record of compiling and disseminating information to the public about government functions and activities, and that they have undertaken this work in the public interest.  Requesters promised to make any information they received as a result of their FOIA request available to the public, including the press, at no cost.

55.    On September 8, 2018, Professor Koh received an e-mail from ICE-FOIA@dhs.gov acknowledging receipt of the Request (attached hereto as Exhibit B).  The e-mail denied Requesters' request for a fee waiver, stating that they would be charged as "educational requesters."

56.    On September 18, 2018, Professor Koh received an e-mail response to the Request from ICE-FOIA@ice.dhs.gov seeking clarification of the phrase "collaboration and communications with the Union Pacific Railroad Police" (attached hereto as Exhibit C).  Specifically, ICE asked for clarification of "[w]ho/what individuals or positions in the offices (field and HQ) should conduct searches," whether Requesters primarily sought "immigration-related records," and the types of records that Requesters sought.

57.    Professor Koh replied to ICE-FOIA@ice.dhs.gov on behalf of Requesters on September 24, 2018, providing the requested clarifications and agreeing to narrow the scope of the initial FOIA request (*see* Exhibit C).  Among the clarifications, Requesters specified their request that "all Field Office

Directors, Assistant Field Office Directors, and Supervisory Detention Officers, attorneys with the Office of Chief Counsel, and all officers assigned to 'fugitive operations' teams" as well as "all officers conducting investigations in the El Monte, CA area" be searched.

58.     After ICE did not respond to the September 7, 2018 Request within FOIA's statutory deadline, Professor Koh submitted an appeal on behalf of Requesters on October 16, 2018 (attached hereto as Exhibit D).  In the appeal, Requesters challenged ICE's failure to respond to the Request within FOIA's statutory deadline under 5 U.S.C. § 552(a)(6)(A)(i) and ICE's refusal to grant Requesters a fee waiver in violation of 5 U.S.C. § 552(a)(4)(A)(iii).

59.     On October 25, 2018, Professor Koh received a final response letter to the Request stating that ICE had conducted a search of the Enforcement and Removal Operations Office, the Homeland Security Investigations Office, and the Office of Acquisitions, and found no responsive records (attached hereto as Exhibit E).  The October 25, 2018 letter was sent by Catrina M. Pavlik-Keenan, FOIA Officer.

60.     ICE acknowledged Professor Koh's October 16, 2018 appeal in a letter dated October 26, 2018 (attached hereto as Exhibit F).  ICE then sent a final response to the October 16, 2018 appeal in a letter dated November 14, 2018 (attached hereto as Exhibit G), which stated that the October 16, 2018 appeal was moot given ICE's final response to the Request on October 25, 2018.

61.     On November 5, 2018, Professor Koh, on behalf of Requesters, submitted an appeal (attached hereto as Exhibit H) to ICE's October 25, 2018 final response letter.  The November 5, 2018 appeal challenged ICE's constructive denial of the Request and ICE's insufficient search for records, which ICE limited only to the Enforcement and Removal Operations Office, the Homeland Security Investigations Office, and the Office of Acquisitions, to the exclusion of the offices and persons that Requesters asked ICE to search.

62.     The November 5, 2018 appeal referenced Requesters' initial request for "[c]ommunications between any employee(s) for the Union Pacific Railroad Police and any ICE employee(s) working in any ICE Field Office, including but not limited to the Los Angeles Field Office."  The appeal also referenced language in the Request asking ICE to search "all appropriate offices and departments within the agency, including, but not limited to, the Office of Public Affairs, the Office of Detention Policy and Planning, the Office of Detention Oversight, and the Office of State/Local Coordination."  The appeal additionally referenced Requesters' September 24, 2018 e-mail response to ICE-FOIA@ice.dhs.gov, which clarified that in particular, Requesters sought searches of "all Field Office Directors, Assistant Field Office Directors, and Supervisory Detention Officers, attorneys with the Office of Chief Counsel, and all officers assigned to 'fugitive operations' teams" as well as "all officers conducting investigations in the El Monte, CA area."

63.     Although over twenty working days have passed since Requesters submitted their November 5, 2018 appeal, ICE has not responded to or acknowledged the appeal as required under 5 U.S.C. § 552(a)(6)(A)(i).

**FIRST CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(3) For**
**Failure To Conduct An Adequate Search For Responsive Records**

64.     Requesters reallege and incorporate by reference paragraphs 1–63.

65.     On September 7, 2018, Requesters submitted a FOIA request to ICE seeking communications between UPRP and ICE employees working in any ICE Field Office, including the Los Angeles Field Office.  Requesters further asked that the Request be directed to all appropriate offices and departments, including the Office of Public Affairs, the Office of Detention Policy and Planning, the Office of Detention Oversight, and the Office of State/Local Coordination.

66.     On September 24, 2018, Requesters clarified in an e-mail to ICE-FOIA@ice.dhs.gov that in particular, they sought a search of all Field Office Directors, Assistant Field Office Directors, Supervisory Detention Officers,

attorneys with the Office of Chief Counsel, officers assigned to "fugitive operations" teams, and all officers conducting investigations in the El Monte, CA area.

67. In a final response letter dated October 25, 2018, ICE stated that it had searched the Enforcement and Removal Operations Office, the Homeland Security Investigations Office, and the Office of Acquisitions, and "no records were found." Requesters appealed ICE's final response letter on November 5, 2018.

68. ICE's limited search of its Enforcement and Removal Operations Office, Homeland Security Investigations Office, and Office of Acquisitions did not include any offices or persons that Requesters explicitly asked to be searched. ICE's arbitrary and limited search was therefore insufficient to meet the "reasonable effort" requirement in 5 U.S.C. § 552(a)(3)(B)–(C).

69. Upon information and belief, ICE possesses a number of responsive documents, specifically identified and sought by Requesters, that it has failed to produce, without justification.

70. Upon information and belief, ICE's failure to produce responsive documents is a result of its insufficient search.

71. Accordingly, ICE's failure to search adequately for and produce the materials requested by Requesters in their September 7, 2018 FOIA request and subsequent November 5, 2018 appeal violates 5 U.S.C. § 552(a)(3) and corresponding ICE and DHS regulations.

72. Under 5 U.S.C. § 552(a)(4)(B), this Court has the authority to enjoin ICE from withholding responsive records and to order the production of ICE records that have been improperly withheld.

**SECOND CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(6)(A)(ii) For**
**Failure To Comply With Statutory Deadlines**

73. Requesters reallege and incorporate by reference paragraphs 1–72.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

74.     On September 7, 2018, Requesters submitted a FOIA request seeking information about ICE's collaboration and communications with UPRP in the enforcement of immigration laws.  In a final response letter dated October 25, 2018, ICE stated that it had conducted a search and found no responsive records.

75.     On November 5, 2018, Requesters submitted an appeal of ICE's final response letter of October 25, 2018.  Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), ICE had twenty working days from receipt of Requesters' appeal to make a determination on the appeal.

76.     ICE's statutory deadline to respond to Requesters' November 5, 2018 appeal expired on or around December 6, 2018.

77.     As of March 20, 2019, ICE has not produced the requested documents or otherwise responded adequately to Requesters' September 7, 2018 request.

78.     As of March 20, 2019, ICE has not responded to or acknowledged Requesters' November 5, 2018 appeal.

79.     Accordingly, ICE's failure to comply with FOIA's statutory deadline to respond to Requesters' November 5, 2018 appeal within twenty working days violates 5 U.S.C. § 552(a)(6)(A)(ii) and corresponding ICE and DHS regulations.

80.     Under 5 U.S.C. § 552(a)(4)(B), this Court has the authority to enjoin ICE from withholding responsive records and to order the production of ICE records that have been improperly withheld.

### THIRD CAUSE OF ACTION
#### Violation Of 5 U.S.C. § 552(a)(4)(A)(iii) For
#### Failure To Grant Waiver of Fees

81.     Requesters reallege and incorporate by reference paragraphs 1–80.

82.     Requesters requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  Specifically, the public has an interest in knowing about the manner in

1 which the federal government is involving state, local, and private entities,

2 including UPRP, in the enforcement of federal immigration laws.

3       83.    In the Request, Requesters emphasized that they have a proven track

4 record of compiling and disseminating information to the public about government

5 functions and activities, and that they have undertaken this work in the public

6 interest, and not for any private commercial interest.  Requesters promised to make

7 any information they received as a result of their FOIA request available to the

8 public, including the press, at no cost.  Accordingly, a fee waiver in this case

9 would fulfill Congress's legislative intent in amending FOIA to favor

10 noncommercial requestors.  *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309,

11 1312 (D.C. Cir. 2003).

12       84.    In a September 8, 2018 e-mail from ICE-FOIA@dhs.gov, ICE denied

13 the request for a fee waiver, stating that Requesters would be charged as an

14 "educational requester."

15       85.    There is a lack of information in the public domain about ICE's

16 potential collaboration with UPRP or whether and how ICE has encouraged UPRP

17 to engage in immigration enforcement activity, and the records sought in the

18 Request would inform the public of the scope and effect of such collaboration.

19       86.    ICE's refusal to grant Requesters a waiver of fees associated with the

20 production of responsive documents, which Requesters sought on the grounds that

21 disclosure of the records is in the public interest, therefore violates 5 U.S.C. §

22 552(a)(4)(A)(iii).

23       **<u>REQUEST FOR RELIEF</u>**

24     WHEREFORE, Requesters respectfully request that the Court:

25     (A) Declare that ICE's withholding of the requested records is unlawful;

26     (B) Order ICE to conduct an adequate search for and make the requested

27 records available to Requesters;

28

1       (C) Order ICE to grant Requesters a waiver of fees associated with the

2   production of the requested records;

3       (C) Award Requesters costs and reasonable attorneys' fees pursuant to 5

4   U.S.C. § 552(a)(4)(E); and

5       (D) Grant all other appropriate relief.

6

7   DATED: March 20, 2019                 /s/ Robert J. Liubicic
                                          Paul S. Aronzon (SBN 88781)
8                                         paronzon@milbank.com
                                          Robert J. Liubicic (SBN 271465)
9                                         rliubicic@milbank.com
                                          Alexandra Achamallah (SBN 317978)
10                                        aachamallah@milbank.com
                                          Milbank LLP
11                                        2029 Century Park East, 33rd Floor
                                          Los Angeles, California 90067
12                                        Telephone: 424-386-4000
                                          Facsimile: 213-629-5063
13
                                          Michael Kaufman (SBN 254575)
14                                        mkaufman@aclusocal.org
                                          Sameer Ahmed (SBN 319609)
15                                        sahmed@aclusocal.org
                                          ACLU Foundation of Southern California
16                                        1313 West 8th Street
                                          Los Angeles, California 90017
17                                        Telephone: 213-977-9500
                                          Facsimile: 213-977-5297
18
19                                        *Pro Bono Attorneys for Plaintiffs
                                          Immigrant Defenders Law Center, Western
20                                        State College of Law Immigration Clinic,
                                          Public Counsel, and Esperanza Immigrant
21                                        Rights Project at Catholic Charities*
22
23
24
25
26
27
28